## McWILLIAMS v. KALBACH ET AL.

1. **Res Adjudicata:** GUARDIAN: EFFECT OF SETTLEMENT. Where a guardian claimed in his final report that certain land sold by him under an order of the court was in fact his property and not his ward's, but in the settlement the court charged him with the proceeds of such property, his bondsman being before the court as an intervenor, it was held that such settlement constituted an adjudication of the question of the ownership of the land and it could not be again raised in defense to an action upon the guardian's bond.

2. **Guardian:** SURETY: EFFECT OF SETTLEMENT. The fact that an order entered by the court upon final settlement of a guardian's accounts did not specify the amount with which he was chargeable on account of the sale of certain land was held not to defeat an action on the special bond given upon such sale, the surety, who was before the court, having taken no exception to the order. The guardian having been held chargeable with an amount greater than the proceeds of the land, which it appeared was sold for the purpose of reinvesting the proceeds, it was held that the whole amount of such proceeds was recoverable on the bond.

*Appeal from Mahaska Circuit Court.*

FRIDAY, DECEMBER 10.

ACTION at law upon a guardian's bond. There were both legal and equitable defenses pleaded; the issues of the first were submitted to a jury, those upon the last were submitted to the court, a verdict was had for plaintiff, and the court found upon the equitable issue for the same party, and judgment was rendered accordingly. Defendant Kalbach appeals.

*Liston McMillen*, for appellant.

*M. E. Cutts*, for appellee.

ROTHROCK, J.—I. The petition alleges that defendant Samuel McWilliams was appointed guardian of Sarah Mc-Williams, who, as is shown by the evidence, was an insane person, and the wife of Samuel Mc-Williams; that upon a final report made by the guardian to the Circuit Court it was ordered that he should

pay to his successor the sum of $731.46, the amount found by the court to be in his hands as guardian.    It is further alleged that McWilliams obtained an order for the sale of certain of his ward's real property, and thereupon the defendant became his surety upon a bond required by the statute to be given in such cases.    Under this order McWilliams, as guardian, sold the property and received therefor $510. This, with other moneys received by the guardian, made the amount found by the Circuit Court to be due from him which he was required to pay to his successor.

This action was commenced by the guardian who was appointed to succeed McWilliams.    Pending the action an order was made removing the guardian and restoring Mrs. McWilliams her rights to control her property, she having recovered her reason.    Thereupon she was substituted as plaintiff in this action.    The defendant, Kalbach, in his answer set up several legal and equitable defenses.

Although numerous errors are assigned, in our opinion the rights of the parties must be determined upon what is denominated the equitable defenses, taken in connection with the proceedings in the Circuit Court in the matter of the guardianship, and to these we will direct our attention.    They are as follows:    When McWilliams was appointed guardian, it is alleged, his ward was not and never had been the owner of any real estate.    The property sold by the guardian was in fact owned by him, having been purchased with his money, and the title vested in his wife.    The proceedings for the appointment of a guardian after the wife became insane, and the order and proceedings for the sale of the property, were had for the purpose of enabling McWilliams to sell the property.    The bond sued upon was executed in compliance with an order of the Circuit Court, at the time the order for the sale was made.    An amendment to the equitable answer alleges that in 1862 McWilliams purchased certain real estate and caused it to be conveyed to his wife, the plaintiff in this case.    At this time he was largely indebted, and his object

in causing the land to be conveyed to his wife was to hinder and delay his creditors, and his wife participated in the fraudulent design. There was an understanding and agreement between McWilliams and his wife that he was to control the property, and she was to hold the title from his creditors. The property was sold and the proceeds invested in other real estate, and the title thereof taken in the name of his wife with the like purpose of defrauding his creditors. In 1871 the land last referred to was traded for the property sold by McWilliams as guardian of his wife, and the deed therefor was also made to her under an agreement or understanding that he should control the same as his own, and that he did so control it until it was sold by him as guardian. It is not claimed that at the time of the last conveyance Mc-Williams was indebted to anyone.

It appears in evidence that Sarah McWilliams was adjudged to be insane on the 7th of May, 1873, and on that day her said husband was appointed guardian of her person and property. On the same day he made application by petition for the sale of her real estate, being the same which was last conveyed to her as alleged in the equitable defense. The ground of the application was that the property was rapidly depreciating in value, and the interests of said ward demanded " that said property should be sold and the money invested in some other property, or should be loaned out and properly secured under the order of the court." The order of sale was made in November, 1873, and in consequence of said order the said McWilliams was required to file an additional bond, and the bond in suit was filed. The property was sold in January, 1876, for $510, and the sale was approved by the court. In November, 1876, after an order of removal of McWilliams as guardian, he filed his final report, in which he claimed that there was a balance of $200 due to him from his said ward. The court refused to approve the report, and referred the same to a referee. The defendant, Kalbach, intervened in the proceeding, and on his petition the report of the

referee was referred back to him, and a second trial was had and report made. In the report made by McWilliams he set forth substantially the same facts as to the ownership and title of the real estate which appears in the equitable defense in this action. The second report of the referee was approved by the court, and McWilliams was ordered to pay to F. M. Davenport, who had been appointed his successor, the sum of $731.46, the amount found to be in his hands. In making up the account the referee charged McWilliams with the proceeds of the sale of said real estate.

Now it appears to us from the foregoing statement of facts that no argument is required to demonstrate that the question as to the title of the real estate was adjudicated in the proceeding for the settlement of the guardian's accounts with his ward, and that as Kalbach voluntarily made himself a party thereto he is estopped by the finding and order of the Circuit Court from questioning the order made requiring McWilliams to pay over to his successor the amount found to be in his hands. This is apparent, unless it be held that the settlement of the accounts of a guardian and the order requiring him to pay over the amount found to be in his hands is a mere idle ceremony, and not binding upon the parties thereto.

II. The real estate was sold for $510. The amount found to be in the hands of the guardian was $731.46. It was

2. GUARDIAN: shown that McWilliams received from other surety: effect of settlement. sources, such as rents and the proceeds of a promissory note, some $800, and that he was entitled to credits for some $578. It is claimed that, as the order requiring him to pay over to his successor the amount found in his hands did not specify what portion of such amount accrued from the sale of the real estate, no action can be maintained upon the bond which was given because of the sale of the same. It would doubtless have been more explicit if the order had made such designation, but we do not think that was necessary to maintain an action upon the bond. It is

true no action can be maintained for the breach of a guardian's bond until there has been a settlement of the accounts, or until the guardian has failed to obey a mandate of the court requiring him to account. *O'Brien v. Strang*, 42 Iowa, 643. But in this case there was a full settlement, and the guardian was ordered to pay the amount found in his hands. In view of the fact that these parties were all before the court and no exception was taken to the form of the order, and because the real estate was not sold for the purpose of raising means for the ward's support, but for the purposes of investment, and as the sums realized from rents and other sources were more than sufficient to cover all the expenses, we think it was properly determined that the amount realized from the sale of the real estate was chargeable to the bond in suit.

It is unnecessary to discuss in detail the errors assigned. Having determined that the question as to the title of the real estate was adjudicated in the former proceeding, and that such a settlement was made as would authorize the maintainance of this action, we have determined all there is in the case.

AFFIRMED.